## LEONARD *v.* STATE

[No. 132, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*William Greenfeld* and *Francis J. Valle* for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom was *Hall Hammond,* Attorney General, and *Anselm Sodaro,* State's Attorney for Baltimore City, on the brief, for appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment on conviction of violating gambling laws. The only question presented is whether a motion to quash a search warrant was properly denied and evidence obtained by search under the warrant was properly admitted. The sufficiency, in law and in fact, of the evidence (if admissible) is not questioned. The question is, whether the facts stated in the affidavit and application for the search warrant are sufficient to show probable cause.

The affidavit and application of Captain Emerson, dated May 10, 1951, states that: The premises in question are "the premises on the second floor, combination restaurant and poolroom, 1019½ W. North Avenue, a two-story brick building". On May 7, 1951, a named officer watched the premises from 7 to 8:15 p.m. At

7:10 p.m. the officer was standing on the southeast corner of Madison and North Avenues, when two white men walked up on the corner and began talking. One said, "If I don't start winning soon on these night games, I'll have to stop betting." The other man said, "You worry too much, come let's go up to Tiger's, he owes me twenty bucks from yesterday's game." The two men then entered the premises 1019½ W. North Avenue. The officer then walked east on North Avenue, past No. 1019½ where the two men had entered. There was a white man, described by age, height and weight, standing in the doorway looking up and down the street. The officer crossed the street and stood on the northwest corner of Eutaw Place and North Avenue and watched. Between 7:25 and 8:15 p.m. he saw twenty-five white men enter the premises No. 1019½. Of the twenty-five only three came out. Each time a white man entered or left the premises, the described man "would look up and down the street in a suspicious manner, acting in the capacity of a watchman". On May 8, 1951 the officer again watched the premises from 7 to 8:15 p.m. Upon arrival at Madison and North Avenues the same man was standing in the same doorway "looking up and down the street in a suspicious manner". Between 7 and 7:30 p.m., the officer saw ten white men enter the premises 1019½ W. North Avenue. At 7:35 p.m. the officer was standing on the corner of Madison and North Avenues, near a group of men who were talking about baseball. One man said, "Tiger is giving good odds on the Orioles tonight, I think I'll put $10.00 on them"; he then entered the premises No. 1019½. At 7:45 p.m. a white man approached the man standing in the doorway and said to him, "Give this action to the boss". He handed the man white slips of paper with some United States currency. The man then went up the steps of the premises and returned to the doorway in a few moments. Between 7:50 p.m. and 8:15 p.m. six white men entered the premises. The search warrant directed search of "the said premises on the second

floor, of 1019½ W. North Avenue, a two-story brick building" for baseball betting paraphenalia "used in the unlawful operation of gambling on the results of baseball games".

Apparently baseball betting differs in some respects from the pattern, judicially familiar to us, of numbers betting and much bookmaking. In baseball betting most of the customers do not make flying visits. In view of this difference, and the fact that these premises had an ostensible lawful use, "combination restaurant and poolroom", we put no stress on the numbers that entered the premises. But we think the conversations between persons some of whom immediately entered the premises—and the statement, to the "watchman", of one who left money there without entering—furnished ample probable cause for belief that a baseball betting establishment was being maintained there. These statements were not hearsay from unknown sources, but were significant verbal acts of men who "suited the action to the word and suited the word to the action". *Cf. Carpenter v. State*, 200 Md. 31, 88 A. 2d 180, just decided.

Defendant says the application did not sufficiently identify the premises as all the second floor. We think this is a hypercritical interpretation of the words of the affidavit. The premises were the second floor of a two-story building. There were "steps" at the doorway, *i.e.*, the doorway was the usual upstairs entrance to a two-story building of which the two storys were used, presumably or possibly, by different persons for different purposes. We think "the premises on the second floor, combination restaurant and poolroom", does not mean "part of the premises" or "one of the premises" on the second floor.

*Judgment affirmed, with costs.*